For the reasons assigned the judgment appealed from is affirmed.

O'NIELL, C. J., is of the opinion that the tax in question is, in effect, not a license tax, but a tax on the right of possession or ownership of the property, and hence a tax on the property itself, in excess of the constitutional limitation, because the so-called *dealer*, as defined by the statute, embraces every possessor of malt, whether "for distribution, sale, or use."

(122 So. 849)

No. 29809.

**GERDE–NEWMAN & CO. v. E. A. CONWAY, Supervisor of Public Accounts.**

April 22, 1929. Rehearing Denied May 20, 1929.

Dufour, Rosen & Kammer, of New Orleans, for appellant.

Percy Saint, Atty. Gen., and Peyton R. Sandoz, Asst. Atty. Gen. (White, Holloman & White, of Alexandria, and Burke & Smith, of New Iberia, of counsel), for appellee.

THOMPSON, J. The sole question presented in this case is whether the tax imposed by Act No. 4 of the Legislature at its extra session in 1928 is a property or a license tax.

In the case of the Fleischmann Co. v. Conway (No. 29808 on the docket of this court), 122 So. 845,[1] we held, in an opinion this day handed down, that the tax was not a property tax but a license tax.

For the reasons assigned in that case the judgment herein appealed from is affirmed.

[1] Ante, p. 547.

O'NIELL, C. J., is of the opinion that the tax in question is, in effect, not a license tax but a tax on the right of possession or ownership of the property, and hence a tax on the property itself, in excess of the constitutional limitation, because the so-called *dealer*, as defined by the statute, embraces every possessor of malt, whether "for distribution, sale, or use."

(122 So. 850)

No. 29800.

**BOARD OF LIQUIDATION OF STATE DEBT OF LOUISIANA v. WHITNEY–CENTRAL TRUST & SAVINGS BANK et al.**

May 20, 1929.

Percy Saint, Atty. Gen., Peyton R. Sandoz, Asst. Atty. Gen., and E. R. Schowalter, of New Orleans, for appellant.

Milling, Godchaux, Saal & Milling and R. C. Milling, all of New Orleans, for appellee Whitney Bank.

Lewis R. Graham, of New Orleans, amicus curiæ.

ROGERS, J. This suit is against two financial institutions of the city of New Orleans to enforce specific performance of their joint obligation to purchase an issue of bonds amounting, in the aggregate, to $589,260. The bonds were authorized by article 18 of the state Constitution, as amended by a joint resolution adopted by the Legislature and approved by the Governor, being Act No. 23 of 1928. The legislative act was submitted to the voters of the state, and was ratified by them at an election held November 6, 1928. Subsequently, the usual proclamation was issued by the Governor. The board of liquidation of the state debt then met and authorized the issuance of bonds in the sum hereinabove mentioned. The successful bidders were the two defendant corporations, which, however, declined to comply with their bid, on the ground that the constitutional amendment was not legally submitted to the electors of the state. Their contention was upheld by the court below, which dismissed the suit. Plaintiff has appealed from the judgment.

A reference to the legislative journals discloses that the resolution proposing the amendment was introduced in the house as House Bill No. 104 on May 28, 1928. It went through the usual routine prescribed for legislation, and was finally adopted on June 8th by a vote of 87 ayes and 0 nays, being more than a two-thirds majority of the membership of the house. The bill was then sent to the Senate, where it was received on June 11th. It was read the first time in full on June 12th. On the next day, June 13th, it was read the second time in full, and referred to the appropriate committee. The committee reported the bill favorably on June 19th. It was returned to the calendar on June 20th, and on June 21st it was read in full and referred to the legislative bureau. On June 25th, the bill was reported with amendments by

the legislative bureau. The amendments were read and adopted, and the act was read by title, and passed to the third reading. On June 28th the bill was read in full, and finally passed; the vote being 39 yeas and 0 nays, constituting the entire membership of the Senate. The bill, with the amendments, was then sent to the House, where it was received on June 29th, and on the same day the House concurred in the amendments by a majority vote only taken on the yeas and nays. The vote was 57 yeas and 0 nays. Thereafter the bill was approved by the Governor.

■■ The defendants take the position that the constitutional amendment, which is popularly known as the "Confederate Veterans' Bond Amendment," was never properly submitted to the electorate, and therefore was never legally adopted, because the bill as amended in the Senate was not concurred in by two-thirds of the membership of the House, as required by article 21 of the state Constitution. Whether their position is correct or not is the sole question presented for decision. In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt. People v. Sours, 31 Colo. 369, 74 P. 169, 102 Am. St. Rep. 34; People v. Prevost, 55 Colo. 199, 134 P. 129; Martien v. Porter, 68 Mont. 450, 219 P. 817.

The journals of both houses show that the so-called amendments to the bill consisted entirely of suggestions or recommendations embodied in the report transmitted to the Senate by the legislative bureau. The bureau, itself, is a branch of the legislative department created by section 31 of article 3 of the Constitution, with advisory powers only. Its authority is expressly limited to the "examination and report as to construction, duplication, legality and constitutionality" of all legislative matter intended to have the effect of law. The suggestions or recommendations contained in the report of the legislative bureau related solely to the diction, grammatical construction, and punctuation of the proposed amendment. They were purely formal in their nature, and in no wise affected the substance of the bill. Their approval and incorporation in the bill by the Senate did not change its purpose or scope. The bill was received and passed by the Senate as House Bill No. 104. It was the same bill, with certain corrections making for clarity and precision, that was originally adopted in a constitutional manner by the house—not a new bill. In these circumstances, it cannot be convincingly stated that the minds of both houses did not meet in the adoption of the bill. It would be entirely too technical to hold otherwise, and we would have to abandon the substance of right for the shadow of form in order to do so.

■ If the provisions of the Constitution for its own amendment are not literally, but are substantially, complied with in some portion of the procedure, and from which no injury results, the amendment, when ratified by a majority vote of the people is valid. Martien v. Porter, 68 Mont. 450, 219 P. 817; People v. Sours, 31 Colo. 369, 74 P. 169, 102 Am. St. Rep. 34; Leavenworth County Com'rs v. Higginbotham, 17 Kan. 62; Ill. Cent. R. Co. v. People, 143 Ill. 434, 33 N. E. 173, 19 L. R. A. 119.

■■ The general rule is that the question of whether a constitutional amendment has

been legally adopted by the Legislature and approved by the people is for the courts to investigate and determine. Boyd v. Olcott, 102 Or. 327, 202 P. 431. The rule, we think, necessarily, authorizes the court upon an objection like the one here to inquire into the question of whether the changes in the proposed amendment are formal or substantial. In this we are in accord with the decision of the Supreme Court of Tennessee in the case Gaines v. Horrigan, 4 Lea (Tenn.) 608. In that case it was sought to have a certain legislative act declared invalid, on the ground that it had not been adopted by both Houses in a constitutional manner. The statute had been regularly passed in the Senate and amended in the House, but the amendment was not concurred in by the Senate. The court found that, according to the legislative journals, the Senate had not concurred in the amendment proposed by the House, but held, nevertheless, that the bill was not amended in the House so as to change its legal import and effect; that, if it may look to the journals to ascertain the form of an amendment not concurred in, it may look further to ascertain that, in substance, there was no amendment whatever. The court in its opinion says:

"It is earnestly argued that it would be a very great stretch of judicial power for a court to undertake to say that the amendment is immaterial; that this was a question for the two Houses of the Legislature; that it is enough for this court to see that the bill was amended in the House, and the Senate did not concur in the amendment; that we cannot look beyond to see in what the amendment consisted. But it seems to us that it would be the exercise of a power far more arbitrary and unwarranted for the court to declare the Act of the Supreme legislative authority void upon an objection like this, in which there is no substance. If we may look to the journals to see that in form there was an amendment not concurred in, we may look further to see that in substance there was no amendment. We have no direct authority upon the point, but we are of opinion that the Act cannot be declared void, for the reasons given. The bill did receive the assent of both Houses in the constitutional mode."

The defendants have cited a number of cases in their brief as sustaining their legal position. None of these cases, however, are precisely in point. All of them involve radical defects in the legislation attacked.

Our conclusion is that the constitutional amendment herein assailed was submitted to the electorate of the state in substantial compliance with the mandatory provisions of the fundamental law, and that therefore its submission was legal and its adoption valid.

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of plaintiff, the board of liquidation of the state debt of Louisiana, and against the defendants, Whitney-Central Trust & Savings Bank and the Hibernia Securities Company, Inc., ordering said defendants to comply with their joint bid for the purchase of the bonds, aggregating the sum of $589,260, described in plaintiff's petition, and to receive and pay for said bonds in accordance with the terms of their said joint bid; all costs of this suit to be paid by defendants.

ST. PAUL, J., concurs in the result.
O'NIELL, C. J., absent, takes no part.