McKenzie v. City of DeWitt.

4-5387                                          121 S. W. 2d 71

Opinion delivered November 7, 1938.

1116

*J. M. Henderson, Jr.*, for appellant.
*Geo. E. Pike*, for appellee.

BAKER, J. This suit was instituted by D. W. Mc-Kenzie, a citizen and taxpayer and elector, in the city of DeWitt, and also by J. W. Boydston, who was the owner of property situated in the city of DeWitt, but who was not a resident of the city. It is alleged that on the 25th of July, 1938, the city of DeWitt, by its alderman and mayor, passed an ordinance designated as No. 86 calling an election to allow the qualified electors of the city of DeWitt to vote on the question of issuing $30,000 in 5 per cent. bonds, under Amendment No. 13 of the Constitution of the State of Arkansas. The bonds were to be issued for the purpose of procuring funds to pay for the paving of the streets of the city. The date of the election was fixed as of September 12, 1938, by said ordinance, and it is said that notice thereof was duly published that the election was to be held at the usual or regular polling places within the said city.

The fourth paragraph of the complaint is to the effect that the members of the general election commission of Arkansas county met as required by law for the

purpose of selecting judges and clerks to serve at each of the polling places in the city. The judges and clerks of the election, so selected by the general election commissioners, all of whom served on September 12, 1938, were not the same judges and clerks appointed to serve in the November general election in 1936, nor were they the same who were appointed by the general election commissioners to serve in the city election held in April of 1938.

It was further pleaded that such election judges and clerks served after notice, but that there was no notice of removal served upon the original judges and clerks, and that such newly appointed election judges and clerks accepted the illegal appointments, though they were not properly selected for such positions.

It was also pleaded that Boydston owned real estate in the city of DeWitt, paid taxes thereon, held a poll tax receipt, and that he had a right to vote in said city election, except for the reason that he was not an elector within said city; that he made a request to be permitted to vote and was refused that right.

It was also alleged that the election held on September 12, 1938, was void and of no effect, because of the illegal acts complained of and just stated, and for the reason that according to the provisions of notices published in regard to the said election a tax was to be levied not only upon real property, but upon personal property.

The prayer was that the mayor and aldermen be restrained from passing or publishing an ordinance authorizing the isusance of bonds under the aforesaid election for the reasons assigned.

After service of summons a general demurrer was filed in which it was alleged that the allegations of the complaint were not sufficient to constitute a cause of action. It is then stipulated that the suit might be presented for hearing and decision by the chancellor, without waiting for the regular term.

Upon trial of the cause the court sustained the demurrer. The plaintiffs refused to plead further and their action was dismissed. From this order and decree of the court comes this appeal.

As a resume of the conclusions we have reached in this case we hold it must be conceded that officers are, in the absence of proof to the contrary, presumed to have performed their official duties. It has been frequently so held by our courts. We know of no exception to the rule. Hence, it is presumed to apply to election officers as well as others.

We agree with appellants' theory that election laws should be strictly obeyed. In fact, it has been held that all the provisions of election laws are mandatory if enforcement be sought prior to the holding of the election, but, after the election, the rule is different, and those provisions will ordinarily be held as directory only in support of the result. Of course, there may be some special provision of the statute in which it may be declared that some act is essential to the validity, or that some omission might make void an election, but the general rule must be that after the election shall have been held, general provisions must yield in order to support the result of the election. It was so held in *Jones* v. *State,* 153 Ind. 440, 55 N. E. 229. That holding has been cited with approval by this court, and, so far as we have been able to discover the doctrine has been uniformly adhered to. *Wallace* v. *Kansas City So. Ry. Co.,* 169 Ark. 905, 279 S. W. 1.

The general trend of the decisions of the court may be determined from the case of *Whitaker* v. *Mitchell,* 179 Ark. 993, 18 S. W. 2d 1026, and some more recent cases approving the announcements there made.

It was held in *Whitaker* v. *Mitchell, supra,* that the voice of the people is not to be rejected for a defect or want of notice, if they in truth have been called upon and have spoken. Of course, the question under consideration here is not the lack of notice, but it is one perhaps not more important, nor less essential than a notice in the matter of an election. It is a proposition of whether there were election judges and clerks duly designated as such to hold an election. Our conclusion, therefore, is that every presumption, until the contrary appears, must be indulged to sustain the regularity and legality of the election.

So we must hold that the new election commissioners did not act without authority. The presumption must be that the old election judges and clerks had refused to serve, had resigned, had been regularly removed, or were removed by the appointment of the new election judges and clerks who would hold the election. There is no contention in this case that the election was not fairly held, that the officers were not thoroughly competent or qualified, but the objection is purely technical, that others who had held the former city election, at least, should have been required to hold this election, or that there should now be some explanation or reason shown why they did not act in the election of September 12th. No explanation of the kind appearing, appellants insist that we should declare that there was in fact no election held. This does not follow. On the contrary, it might well be determined, under such a holding, that facility for public expression and election would be much impaired. This presumption of regularity is not a new theory as it will be determined by announcements of this court in the case of *Webb* v. *Bowden*, 124 Ark. 244, 187 S. W. 461, Ann. Cas. 1918A, 60. It was there held that the removal of old election judges by the commission and the appointment of new ones would be presumed although the new ones were. partisans of the proposition under consideration. Such act of removal was within the powers of the commissioners. So we think it must be held that the election commissioners acted within their power and authority and that the election judges and clerks appointed by them were regularly and legally selected for that service, and that they held an election valid in all particulars, so far as may be the effect of the allegations made by appellants.

While it is not necessary so to hold, we think if it appeared from this record that the election judges and clerks so complained of were merely *de facto* election officers, we should be impelled to say that the election was valid and regular in so far as it related to the city and public interests. It must, therefore, be concluded that the election was regular.

The next question raised, which is also settled by the demurrer, is that one of the appellants who did not

reside in the city was not permitted to vote in the election, although he owned real property in said city, which will be subject to the additional tax of five mills. This condition is by no means unique, but because of the fact that the principle involved, of taxation without representation, has the heritage of generations to support it, adds nothing to its merit. In truth, it is wholly without merit because a provision of the Constitution, under which the city of DeWitt is acting, provides: "Qualified voters of said municipality only shall have a right to vote at said elections."

It is next urged by the appellants that because of the fact that the new tax to be levied for the redemption of the bonds to be issued to pay for the paving is a tax upon real and personal property in the municipality, the instability of the tax on personal property is such that we should declare the proceedings void; that the lien cannot be made to follow personal property, or if so provided that such tax could not be enforced.

It is seen from this contention that appellants confuse this method of raising revenue to redeem the bonds issued under the provisions of law for forming improvement districts, wherein bonds of such districts may be issued and sold to pay for the improvements contemplated. This is an entirely different system, wholly unrelated to the organization of improvement districts. This amendment confers upon cities the right to exercise particular powers to make certain improvements under the conditions and provisions set forth and contained in said Amendment No. 13, and authorizing the issuance of bonds to pay therefor with an additional provision that the municipal government may levy additional taxes for the redemption of the bonds.

The lien of such tax or taxes will not be different from the lien of other municipal taxes provided for under the law authorizing cities to assess and collect a general property tax not in excess of five mills.

The appellants here are not really concerned with that issue, because the instability of the security is a matter that would appeal to bond purchasers and in no manner affect the property owner except in so far as such

insecurity may affect the value of the bonds to be sold. Such sales are, however, made under legal safeguards deemed sufficient for the property owner's protection.

Said Amendment No. 13 also answers the objections made by appellants. It provides for the tax on real and personal taxable property.

Affirmed.