Harry M. CHANEY et al *v.* Kelly
BRYANT, Secretary of State[1]

75-258                                    532 S.W. 2d 741

Opinion delivered February 17, 1976

---

[1]This action was commenced against Kelly Bryant as Secretary of State and a decree rendered in his favor. No one has bothered to move for any substitution of parties. Since the litigation was against the late Mr. Bryant in his official capacity any judgment or decree would be binding on his successors in office.

*McArthur, Loftin & Wilson,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Lonnie A. Powers,* Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. By an amended complaint, appellants sought to have Amendment 54 to our state constitution, which was proposed by the General Assembly and submitted to the people at the 1974 General Election, declared void on the ground that the ballot title was misleading in that it misrepresented the changes the adoption of this amendment would bring about. Appellee filed a demurrer on the ground that it does not state facts sufficient to constitute a cause of action because no facts were alleged that violated any rights of appellants. This demurrer was sustained and the complaint dismissed. Appellants argue that the court erred in sustaining the demurrer, saying that factual issues are involved. We disagree with this argument.

This amendment was proposed by the General Assembly as a substitute for Art. 19 § 15. According to the allegations of the complaint, the ballot title read as follows:

Proposing an amendment to the Constitution requiring competitive bidding for the purchase of printing, stationery, and supplies.

This was the exact title of Senate Joint Resolution 6 of 1973, by which the amendment was proposed.

Appellants rely on numerous cases involving proposals for acts and constitutional amendments by initiative, in preelection attacks on ballot titles. None of them are applicable. There are two entirely different methods by which constitutional amendments may be proposed, and they are governed by entirely different procedures and requirements. *Coulter* v. *Dodge,* 197 Ark. 812, 125 S.W. 2d 115; *Berry* v. *Hall,* 232 Ark. 648, 339 S.W. 2d 433. Art. 19, § 22 of the Arkansas Constitution governs those proposed by the General Assembly. Amendment 7 is primarily concerned with initiated proposals, and its provisions do not govern those proposed by the General Assembly, except where the language of that amendment expressly applies. *Berry* v. *Hall,* supra. Cf. *Brickhouse* v. *Hill,* 167 Ark. 513, 268 S.W. 865. There is no language in Amendment 7 pertaining to ballot titles for legislative proposals of constitutional amendments. Art. 19, § 22 only requires that proposals by the General Assembly be so submitted as to enable the people to vote on each amendment separately.

There is no clearcut statutory requirement of any ballot title for an amendment proposed by the General Assembly. Ark. Stat. Ann. § 2-208 (Repl. 1956) relating to ballot titles applies to initiated proposals only. The Governor, Secretary of State and State Comptroller (now Director of the Department of Finance and Administration) are required to fix and declare a number and popular name by which each proposed amendment shall be designated in all legal notices and publications, proceedings and publicity affecting it. Ark. Stat. Ann. § 2-209, 214 (Repl. 1956). The only mentions of any ballot title in the statutes which could possibly have any

bearing on proposals of the General Assembly are the requirements that notices of the proposed measures "contain the number, the popular name, the ballot title and a complete text" and that the Secretary of State furnish the State and County Boards of Election Commissioners a certified copy of "the ballot title and popular name for each proposed measure." Ark. Stat. Ann. § 2-212, 216 (Repl. 1956). The popular name actually serves the constitutional requirement of submission in a manner enabling the voters to vote on the proposed amendments separately. We have said that it is a device useful to facilitate voter discussion prior to election, but that it need not contain detailed information or include exceptions which might be required of a ballot title. *Pafford* v. *Hall*, 217 Ark. 734, 233 S.W. 2d 72. We note that the notice published included the popular name "State Printing Contracts." The publication otherwise consisted of the designated number and the complete text of the Joint Resolution by which it was proposed.

Legislative proposals are distinguished on the ballot from those initiated in a manner that the voters can differentiate between them. Ark. Stat. Ann. § 2-216. It is notable that the constitution requires that amendments proposed by the General Assembly be published for six months before the election in a newspaper in each county, but only requires one pre-filing publication of an initiated proposal and such other publications as may be required by law. Art. 19, § 22 and Amendment 7. The statutes require publication of initiated proposals, to commence only eight weeks prior to the election. Ark. Stat. Ann. § 2-212. It is also significant, in considering the reasons underlying differential treatment of the two types of proposals, that a legislative proposal must be entered at length in the legislative journals. Art. 19, § 22. *McAdams* v. *Henley*, 169 Ark. 97, 273 S.W. 355, 41 ALR 629; *Coulter* v. *Dodge*, supra. On the other hand, there is no permanent official record of initiated proposals. Furthermore, we must keep in mind that, when proposing a constitutional amendment, the General Assembly acts in the character and capacity of a constitutional convention and not in the exercise of its ordinary legislative authority. *McAdams* v. *Henley*, supra.

The question whether an amendment has been adopted

is a judicial one. *Rice* v. *Palmer*, 78 Ark. 432, 96 S.W. 396. If constitutional requirements for submission of an amendment proposed by the General Assembly are disregarded or compliance totally omitted, the courts, upon appropriate application, will hold that the amendment was not properly adopted, a favorable vote at a general election notwithstanding. *McAdams* v. *Henley*, supra. Still, it is quite generally held that after a proposed constitutional amendment has been ratified by the people, every reasonable presumption, both of law and fact, will be indulged in favor of its validity. *Southern Railway Co.* v. *Fowler*, 497 S.W. 2d 891 (Tenn., 1973); *Board of Liquidation, etc.* v. *Whitney-Central Trust & Savings Bank*, 168 La. 560, 122 S. 850 (1929); *Hammond* v. *Clark*, 136 Ga. 313, 71 S.E. 479 (1911); *People* v. *Sours*, 31 Colo. 369, 74 P. 167 (1903); *Keenan* v. *Price*, 68 Idaho 423, 195 P. 2d 662 (1948); *State* v. *Cooney*, 70 Mont. 355, 225 P. 1007 (1924); *Larkin* v. *Gronna*, 69 N.D. 234, 285 N.W. 59 (1939). See *McKenzie* v. *City of DeWitt*, 196 Ark. 1115, 121 S.W. 2d 71.

The proposition is well stated in *Board of Liquidation, etc.* v. *Whitney-Central Trust & Savings Bank*, supra, viz:

*** In reaching the decision, the court must necessarily have in mind the universal rule that, whenever a constitutional amendment is attacked as not constitutionally adopted, the question presented is, not whether it is possible to condemn, but whether it is possible to uphold; that every reasonable presumption, both of law and fact, is to be indulged in favor of the legality of the amendment, which will not be overthrown, unless illegality appears beyond a reasonable doubt. *People* v. *Sours*, 31 Colo. 369, 74 P. 167, 102 Am. St. Rep. 34; *People* v. *Prevost*, 55 Colo. 199, 134 P. 129; *Martien* v. *Porter*, 68 Mont. 450, 219 P. 817.

To the same effect, *Keenan* v. *Price*, supra; *State* v. *Cooney*, supra, *State* v. *Alderson*, 49 Mont. 387, 142 P. 210 (1914). In some cases, emphasis is given to the inherent political power of the people as the ultimate sovereign to alter or reform their government as they may think proper as expressed in Art. 2, § 2 of our Constitution. See *People* v. *Sours*, supra; *State* v. *Cooney*, supra.

The view is taken on a legislative proposal that substance is more important than form and the will of the legislature in proposing it and of the people in ratifying it at the proper time and in the proper manner is not to be lightly disregarded, where the manner of compliance (as distinguished from a total disregard or omission) with a procedural constitutional requirement is involved, and the question has not been raised prior to the election. *Hammond* v. *Clark,* supra; *Constitutional Prohibitory Amendment,* 24 Kan. 700 (1889); *Keenan* v. *Price,* supra; *State* v. *Alderson,* supra. See *Brockelhurst* v. *State,* 195 Ark. 67, 111 S.W. 2d 527; *Whitaker* v. *Mitchell,* 179 Ark. 993, 18 S.W. 2d 1026; *Hogins* v. *Bullock,* 92 Ark. 67, 121 S.W. 1064. A defect in submission which is a mere irregularity is cured by adoption by the people when the amendment has been duly proposed and actually published and submitted to the people without any question having been raised prior to the election. *Sylvester* v. *Tindall,* 154 Fla. 663, 18 S. 2d 892 (1944); *Keenan* v. *Price,* supra. Cf. *Brockelhurst* v. *State,* supra.

Where the vital requirements for a proposed amendment have been met by the vote of legislators and entry of the measure on the legislative journals as required by the Constitution and there has been substantial, though not literal, compliance with procedural requirements for submission, the courts should not invalidate the adoption of the amendment by popular vote. *State* v. *O'Brien,* 134 W. Va. 1, 60 S.E. 2d 772 (1948); *Keenan* v. *Price,* supra; *State* v. *Alderson,* supra. Mr. Justice Brewer (later of the United States Supreme Court) in speaking of a constitutional provision on amendments, similar to our own, said that the two vital elements were the assent of the required majority of the legislature and a majority of the popular vote (which he called the paramount act) and, beyond this, other provisions are machinery and forms. *Constitutional Prohibitory Amendment,*[2] supra. See also, *Keenan* v. *Price,* supra. In that case Justice Brewer and the Kansas court answered in the negative the question whether the secretary of state might, by failure to comply strictly with publication requirements either through ignorance or design, thwart the popular decision. The vast

---

[2]We are not unaware of the fact that unlike the Kansas court in this case, we have held that failure to enter the proposed amendment upon the legislative journals is fatal. See *McAdams* v. *Henley,* supra.

difference between compelling strict observance of rules governing submission of proposed constitutional amendments prior to the election and considering the failure to do so after the people have spoken by their vote was pointed out in *Larkin v. Gronna*, 69 N.D. 234, 285 N.W. 59 (1939).

These holdings are simply applications of the legal philosophy that the courts have a duty to sustain elections which have resulted in a full and fair expression of the public will. We have heretofore brought this philosophy into play in cases where post-election attacks on election results have been grounded upon procedural irregularities. See *Rich v. Walker*, 237 Ark. 586, 374 S.W. 2d 476; *McKenzie v. City of DeWitt*, 196 Ark. 1115, 121 S.W. 2d 71. We have no reservations about applying it here. It would be absurd for the courts to overturn the approval of this amendment by a substantial majority of our voters for the defect alleged, in view of the lack of a specific constitutional or statutory provision requiring or providing specifications for a ballot title for a constitutional amendment proposed by the General Assembly and in view of the publication before submission.[3]

The chancellor correctly held that, as a matter of law, the complaint failed to state a cause of action, so the judgment is affirmed.

GEORGE ROSE SMITH and BYRD, JJ., concur.

---

[3]In the absence of an allegation to the contrary, it must be presumed that all officers performed their official duties pertaining to the election on the proposed amendment. *McKenzie v. City of DeWitt*, supra.