Oscar Stilley Central Mall Plaza Suite 516 5111 Rogers Avenue Fort Smith, AR 72903-2041
Dear Mr. Stilley:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed amendment to the constitution:
 POPULAR NAME AN AMENDMENT TO AUTHORIZE THE CHANGE OF LOCAL TAX RATES, INCLUDING PROPERTY TAX RATES, BY INITIATIVE PETITION, ELIMINATING ALL MINIMUM MILLAGE RATES FOR PROPERTY TAXES, PROVIDING FOR EQUALITY IN DISTRIBUTION OF STATE FUNDS FOR PUBLIC SCHOOLS, REMOVING THE 3 MILL CAP ON COUNTY ROAD TAXES, AND FOR OTHER PURPOSES
 BALLOT TITLE AN AMENDMENT TO THE ARKANSAS CONSTITUTION PROVIDING THAT THE PEOPLE MAY PROPOSE CHANGES IN THE MILLAGE RATES FOR AD VALOREM PROPERTY TAXES OR FOR OTHER LOCAL TAXES, FOR SCHOOLS, CITIES, COUNTIES, OR OTHER PURPOSES, BY THE INITIATIVE PROCESS, IN THE SAME MANNER AS OTHER LOCAL INITIATIVES, UPON THE SIGNATURES OF TEN PERCENT (10%) OF THE VOTERS WITHIN THE TAXING UNIT, CALCULATED AS FOLLOWS: FOR SCHOOL TAXES, TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTES TABULATED IN THE MOST RECENT SCHOOL ELECTIONS IN THE SCHOOL DISTRICT, UPON THE MILLAGE RATE; FOR CITIES, TEN PERCENT (10%) OF THE PERSONS WHO VOTED FOR MAYOR IN THE MOST RECENT GENERAL ELECTION FOR MAYOR; FOR COUNTY TAXES, TEN PERCENT (10%) OF THE VOTES CAST IN THE MOST RECENT GENERAL ELECTION FOR CIRCUIT CLERK; AS TO ANY OTHER TAXING UNIT, AND AS TO ANY TAXING UNIT IN WHICH THE MOST RECENT MEASURING RACE WAS NOT TABULATED, ON THE SIGNATURES OF THE LESSER OF TEN PERCENT (10%) OF THE WHOLE NUMBER OF VOTERS REGISTERED WITHIN THE TAXING UNIT, OR 100 VOTERS OF THE TAXING UNIT; ESTABLISHING PROCEDURES FOR THE CALLING OF SUCH ELECTIONS; PROVIDING THAT IF MORE THAN ONE RATE OF TAX IS PROPOSED, THE HIGHEST RATE RECEIVING THE AFFIRMATIVE VOTE OF A MAJORITY OF THE VOTES CAST UPON THE QUESTION SHALL BE CERTIFIED AS THE LEGAL RATE; PROVIDING THAT ALL PROPOSED TAX INCREASES OR DECREASES SHALL BE PRESENTED TO THE VOTERS AT REGULARLY SCHEDULED STATEWIDE ELECTIONS, AND NOT OTHERWISE, AFTER THE HOLDING OF THE FIRST REGULARLY SCHEDULED STATEWIDE ELECTION IN WHICH THE TAX MIGHT BE INCREASED OR DECREASED, SUBSEQUENT TO THE EFFECTIVE DATE OF THIS AMENDMENT; PROVIDING RULES TO PREVENT THE IMPAIRMENT OF THE SECURITY OF BONDHOLDERS IN CASE OF THE REDUCTION OF MILLAGE RATES; PROVIDING THAT WHERE ALL OR NEARLY ALL THE PROPERTY TAXES WITHIN A COUNTY ARE ABOLISHED, THE POSITIONS OF TAX ASSESSOR AND TAX COLLECTOR SHALL BE ABOLISHED OR CONSOLIDATED WITH OTHER OFFICES, AS SOON AS PRACTICABLE; ABOLISHING ALL MINIMUM MILLAGE RATES; PROVIDING THAT NEITHER THE STATE NOR ITS SUBDIVISIONS SHALL BE REQUIRED TO MAINTAIN ANY PARTICULAR LEVEL OF EDUCATION FUNDING; PROVIDING THAT STATE FUNDS FOR PRIMARY AND SECONDARY EDUCATION SHALL BE DISTRIBUTED EQUALLY ON A PER PUPIL BASIS, WITH RESPECT TO ALL STUDENTS OF A GIVEN AGE GROUP, UNLESS OTHERWISE REQUIRED BY LAW SUPERIOR TO THIS CONSTITUTION; PROVIDING THAT FUNDING OF CHARTER SCHOOL OR VOUCHER STUDENTS, IF ANY, SHALL BE GOVERNED BY LAW OR CONSTITUTIONAL AMENDMENT, AS THE CASE MAY BE; AUTHORIZING SUPPLEMENTAL FUNDING FOR HANDICAPPED STUDENTS; PROHIBITING THE STATE FROM PUNISHING OR REWARDING VOTERS FOR THE TAXES THAT THEY VOTE OR FAIL TO VOTE UPON THEMSELVES; PROHIBITING THE USE OF PROPERTY TAX REVENUES FOR ANY TAXING UNIT EXCEPT THE TAXING UNIT FOR WHOM THE TAX IS IMPOSED, EXCEPT WHEN NECESSARY TO EQUITABLY DIVIDE PROPERTY TAX REVENUE BETWEEN TAXING UNITS, IN PROPORTION TO THEIR RESPECTIVE TAXABLE PROPERTY, AND EXCEPT AS TO TAXES COLLECTED ON UTILITY PROPERTY, WHICH MAY BE EQUITABLY DISTRIBUTED AS PROVIDED BY LAW; ELIMINATING THE THREE (3) MILL MAXIMUM FOR COUNTY ROAD TAX MILLAGES, WHERE THE MILLAGE IN EXCESS OF THREE (3) MILLS IS APPROVED BY THE VOTERS AS PROVIDED HEREIN; PROVIDING THAT NOTHING HEREIN SHALL SUPERSEDE ANY ABOLITION OF THE PROPERTY TAX BY POPULAR VOTE ON INITIATIVE AMENDMENT, EXCEPT AS TO PROPERTY TAXES VALIDLY PLEDGED AS SECURITY FOR BONDED INDEBTEDNESS, REGARDLESS OF THE RESPECTIVE VOTES UPON THE MEASURES; PROVIDING FOR LIBERAL CONSTRUCTION IN FAVOR OF THE TAXPAYER, SEVERABILITY, AND GENERAL REPEALER OF CONFLICTING PROVISIONS; PROVIDING THAT THE AMENDMENT IS SELF-EXECUTING AND SHALL TAKE EFFECT IMMEDIATELY, EXCEPT AS OTHERWISE PROVIDED; AND FOR OTHER PURPOSES.
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to several unresolved ambiguities in the text of your proposed measure. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
The ambiguities to which I refer occur in various sections of the text of your proposed amendment. They include (but are not necessarily limited to) the following:
 (1) The first area of concern occurs in Section 1, Parts (a) through (d) of the proposed amendment. Part (a) purports to authorize changes in the millage rates for ad valorem taxes through the "initiative process." Parts (b) and (c) then provide that elections and petitions for such initiatives are to be in the form "now used" and "now prescribed" for library millage elections. One concern that arises out of these provisions is the use of the phrases "now used" and "now prescribed." Presumably, these references are to Amendments 30 and 38 to the Arkansas Constitution. However, it is unclear what election procedures and petition formats will apply in the event that the current Amendments 30 and 38 are ever changed. Moreover, it is unclear precisely which portions of the procedures outlined in the current Amendments 30 and 38 are to apply, and what procedures will govern matters that are not adequately addressed by the current library election procedures. (For example, to whom are statewide election results to be certified?) In addition, no mention is made of Amendment 7, which currently governs the initiative process. It is unclear whether your proposed amendment intends to supersede that Amendment for millage elections, or whether Amendment 7 it is to fill in any gaps not otherwise addressed.
 (2) The second area of concern arises out of Section 1, Part (e) of your proposed amendment. That part is aimed at preventing the impairment of the security of bondholders whose interest is secured by the taxes that can be affected by the proposed amendment. It allows "taxing authorities" to impose and levy sales taxes or millage rates that are sufficient to pay bonded indebtedness, in the event that a change in such taxes would have the effect of impairing the ability to pay the bond debt. A possible constitutional problem is the impairment of contracts with bondholders, who may have contractually relied on ad valorem taxes (rather than sales taxes) as security for their investments. Moreover, it is unclear from the language of your measure exactly who would have the authority to make the decision about the ability to repay bond debt and by what procedure such decision would be made, thus raising possible due process problems. In addition, Subparts (1) and (2) of Section 1, Part (e) both provide authority for the assessment and collection of taxes sufficient to pay bonded indebtedness. It is unclear what facts will differentiate between the circumstances that are to be governed by each of these provisions. Finally, Part (e) calls for the abolition or consolidation of the positions of tax assessor and collector "as soon as practicable" after any vote to abolish property taxes. Because it is unclear exactly when this abolition or consolidation will take place, this provision gives further concern to the problem of who is to assess and collect the taxes necessary to secure the interest of bondholders.
 (3) A third area of concern arises out of Section 2 of your proposed amendment, concerning the education funding. The provision that is ambiguous is the phrase concerning charter school and voucher students (who, according to your proposed amendment, are to be "governed by law or constitutional amendment, as the case may be." It is unclear whether you intend to exempt these schools and students from the equal funding provisions of this section.
 (4) A fourth area of concern is Section 3, which provides that the State may not "punish" or "reward" voters as a result of their votes on particular taxes. Because these terms are inherently ambiguous, and are imbued with a connotation of motive, it is unclear exactly what actions these terms prohibit. Although mention is made of "matching funds," it is unclear whether the State may grant matching funds, if it does not do so out of motive to "reward" the voters of a given political subdivision. The converse question, of course, is whether the State may deny matching funds if it does not do so out of a motive to "punish" the voters.
I reiterate that the foregoing discussion is not intended to be exhaustive.
Nevertheless, the failure of your proposed amendment to address the foregoing items adequately is misleading and could lead a court to conclude that the title omits "essential facts" which would give the voter "serious ground for reflection." Bailey v. McCuen, supra. I am reluctant to interject my own interpretation of your measure on these points into a ballot title or popular name given my uncertainty as to the precise underlying assumptions. These questions must be addressed in your measure and ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal. At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen,303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issue discussed above, resubmit your proposed amendment, along with a new proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General