Mr. Barry Emigh 1720 Arrowhead Road, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed initiated act. I rejected two proposed popular name and ballot title submissions for similar measures due to ambiguities in the texts of those measures. See Ops. Att'y Gen. 2000-120 and -135. You have made changes to your measure and submit the following proposed popular name and ballot title for my certification:
 Popular Name TAX ON CERTAIN FOOD ITEMS USED FOR PURPOSE OF SCHOLARSHIPS Ballot Title AN ACT TO PROVIDE FOR THE STATE BOARD OF FINANCE TO RECEIVE, MANAGE AND INVEST THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON FOOD ITEMS DEFINED AS ANY ITEM THAT IS EDIBLE TO INCLUDE DRINKABLE FOOD ITEMS AND NON-PRESCRIPTION VITAMIN SUPPLEMENTS NOT CONTAINING ALCOHOL WITH EXCEPTION TO THOSE EXCLUSIONS HEREIN STATED TO BE DEPOSITED IN A TRUST ACCOUNT SEPARATE FROM THE STATE TREASURY TO BE KNOWN AS THE ARKANSAS SCHOLASTIC TRUST FUND; TO PROVIDE FOR THE CREATION OF THE ARKANSAS SCHOLASTIC TRUST FUND TO BE ADMINISTERED BY THE STATE BOARD OF FINANCE WITH FIFTY PERCENT OF THE INVESTED EARNINGS BEING USED FOR UNIVERSITY AND COLLEGE TUITION PAYMENTS; TO PROVIDE QUALIFICATIONS BASED ON AN INDIVIDUAL'S PERSONAL INCOME AND DEDUCTION OF OTHER EDUCATIONAL GRANTS, SCHOLARSHIPS AND OTHER ASSETS FOR PERSONS TO RECEIVE FULL TUITION PAYMENTS FROM THE ARKANSAS SCHOLASTIC TRUST FUND TO UNIVERSITIES AND COLLEGES WITHIN THE STATE; TO PROVIDE THE ARKANSAS SCHOLASTIC TRUST FUND IS EXEMPT FROM APPROPRIATIONS; TO PROVIDE THIS ACT SHALL NOT AFFECT THE "ARKANSAS SOFT DRINK TAX ACT"; TO PROVIDE THIS ACT SHALL NOT AFFECT THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON ITEMS INCLUDED IN THE "ARKANSAS SOFT DRINK TAX ACT"; TO PROVIDE THE STATE AND LOCAL GROSS RECEIPT SALES TAX ON ANY ITEMS HEREAFTER EXCLUDED FROM THE "ARKANSAS SOFT DRINK TAX ACT" SHALL BE DEPOSITED IN THE ARKANSAS SCHOLASTIC TRUST FUND; TO PROVIDE THIS ACT SHALL NOT AFFECT ANY TAX ON ANY PREPARED RESTAURANT FOODS, PREPARED AND SERVED BY A RESTAURANT, OR OTHER BUSINESSES SIMILAR TO RESTAURANTS SERVING PREPARED FOODS AUTHORIZED, AND DEFINED AS A RESTAURANT, OR SIMILAR BUSINESS IN A.C.A. SECTION 26-75-601 THROUGH -618 AND A.C.A. SECTION 26-75-701; TO PROVIDE THIS ACT SHALL NOT AFFECT ANY TAX ON ANY ALCOHOLIC BEVERAGE TO INCLUDE BEER, WINE, LIQUEURS, CHAMPAGNE AND ALL OTHER INTOXICATING BEVERAGES CONTAINING ALCOHOL FROM THIS ACT; TO PROVIDE FOR REPEAL OF LAWS AND PARTS OF LAWS IN CONFLICT WITH THIS ACT, AND TO PROVIDE SEVERABILITY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed act. See Arkansas Women's Political Caucus v.Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed act that will give the voter a fair understanding of the issues presented.Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v.Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed initiated act, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must again reject your proposed ballot title and popular name due to a number of ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107 (b).
I refer, in a non-exhaustive list, to the following ambiguities:
 1. Section 1(1) of your proposed act states in pertinent part that: "The State Board of Finance is authorized and directed on behalf of the State of Arkansas to receive all authorized payments of the state and local gross receipt sales tax on food items. . . ." Your proposed act is unclear as to whether the State Board of Finance is actually the collecting agency for these taxes, (i.e. whether merchants will remit these taxes directly to the State Board of Finance) or whether the Department of Finance and Administration (DFA), which currently collects and administers these taxes, will have a continuing role in this regard.
 2. A lingering ambiguity exists as to the nature of the "Arkansas Scholastic Trust Fund." Section 2(1) of your proposed act provides as follows: "There is hereby created and established a fund on the books of the Treasurer of State, Auditor of State and Chief Fiscal Officer of the State, a trust fund is hereby created and established separate and apart from the State Treasury. . . ." Aside from the obvious typographical or syntactic infirmities in this sentence, I must note that if a fund is created "on the books" of the State Treasurer, it is by definition a "treasury fund." I am thus uncertain as to how to summarize your proposal on this point.
 3. Section 1(4) of your proposed act refers to the "Arkansas Scholastic Cash Holding Fund," but this fund is neither created nor defined in any other provision of your proposal.
 4. Section 4 of your proposal exempts the Arkansas Scholastic Trust Fund from the normal "budgeting and appropriations of the State Treasury Management Law." As an initial matter, if the Fund is a state treasury fund, exempting it from the requirement of an appropriation is unconstitutional. See Arkansas Constitution, art. 5, § 29 and art. 16, § 12. In addition, the requirements to which you refer are not found in the "State Treasury Management Law," but are found in other various provisions of the Arkansas Constitution and the "General Accounting and Budgetary Procedures Law." I cannot, therefore, fairly summarize this portion of your act in a ballot title for your measure.
 5. Section 2(4)(a) of your proposal provides as follows: "The State Board of Finance is authorized to distribute fifty (50%) percent of the annual investment earnings from five months of the previous year for Fall session of classes, fifty (50%) of the annual investment earning from five months of the previous year for the Winter session of classes and fifty (50%) of the annual investment earning from two months of the previous year for the Summer session of classes." I am uncertain how to summarize this provision. Specifically, the use of the word "annual" in conjunction with the designation of investment earnings from particular months of the year causes an ambiguity. I am uncertain whether the investment earnings designated for scholarships for a particular session of classes is restricted to those earned in a given five months of the year (e.g., the actual investment earnings accruing in the period from January to May of the previous year), or whether the word "annual" somehow implies a yearly total of the investment earnings, which is then to be divided in some 5/5/2 proportional ratio. It would appear that a simple percentage of the annual investment earnings would have sufficed if the latter had been the intention. In addition, this subsection is unclear as to which five months of the year's earnings are designated for the fall session of the following year, etc.
 6. Section 3(4) of your proposal provides as follows: "The State Board of Finance shall provide full tuition payment from the Arkansas Scholastic Trust Fund to any university and college in the state, first, to those persons with the lowest tuition payment after any and all deductions as provided herein with the lowest earned gross income to the highest earned gross income received by the individual from the previous year to include any individual and shared part of any other sources of income they received from the previous year." I am uncertain as to the application of this provision. Specifically, I am unclear as to the interrelation, in terms of priority, of the amount of tuition payment required and the earned income variable. For example, assuming there are a number of applicants with the same lowest amount of tuition required (after the deductions) will they be prioritized by their income, from lowest to highest? Assuming another applicant needs one dollar more in tuition payment, will he be ranked behind all persons in the previous category, even though his earned income is lower than anyone in that category?
 7. Section 3(4)(a) of your proposal provides: "In the event a number of individuals with applications to be considered for full tuition payment from the Arkansas Scholastic Trust Fund by the State Board of Finance have an equal amount of income with the highest amount of income as provided in section 3(4) of this Act and an equal amount of tuition payment after all other deductions to be considered by the State Board of Finance to receive tuition payment with an available amount of the invested earnings for that time period which provides the full tuition payment for some of the individual applicants, but not all; then, the State Board of Finance shall choose those applicants by a lottery for those persons to receive a full tuition payment up to, but not to exceed the available amount of available invested earnings for that period time as provided in this Act." I am also uncertain as to the application of this provision. It applies in the case of a "tie" in terms of "highest amount of income" and tuition payment. In that case, the priority will be determined by lottery. An ambiguity arises as to what will occur in the case of a tie in these variables at a lower level of income. Perhaps my uncertainty in this regard arises from the ambiguity in Section 3(4) discussed above.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed act, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP:cyh