Travis J. Morrissey, Attorney at Law Hurst Law Firm, P.L.L.C. 213 Woodbine Hot Springs, AR 71901
Dear Mr. Morrissey:
You have requested certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted two similar measures that I rejected due to ambiguities in the texts of your proposed amendments.See Opinion Nos. 2002-057 and 2001-379. You have since made additional changes to your measure and submitted a popular name and revised ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN ACT TO AMEND AMENDMENT NO. 75 OF THE ARKANSAS CONSTITUTION AND TO CREATE THE CITIZEN AND RESOURCE PROTECTION FUND
 Ballot Title PROPOSING AN AMENDMENT TO AMENDMENT NO. 75 TO THE CONSTITUTION OF THE STATE OF ARKANSAS TO PROVIDE FOR ARKANSAS GENERAL ASSEMBLY TO CHANGE THE NAME OF THE ENVIRONMENTAL ENHANCEMENT FUNDS, TO CHANGE THE PURPOSE FOR WHICH SUCH FUNDS ARE TO BE USED; AND FOR OTHER PURPOSES
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 1 of your proposal provides that: "The Title of Amendment 75
to the Constitution of the State of Arkansas shall be changed to the "Citizen and Resource Protection Funds" which shall have the powers and duties as are now or may hereafter be prescribed by the General Assembly." This language remains unchanged from your last submission, which I rejected in part based upon several ambiguities arising therefrom. See Op. Att'y. Gen. 2002-057. You must remedy the ambiguities in this Section before I can certify a popular name and ballot title for your measure.
 2. Section 3 of your proposal states that: "Notwithstanding any provision of any provision of the Arkansas Constitution, or amendment thereto, to the contrary, forty five percent (45%) of all monies collected from the tax levied herein shall be deposited in the State Treasury as special revenues and to be appropriated for the Arkansas Medicaid Program Trust Fund as the General Assembly shall see fit, but specifically to further protection of the elderly citizens of this state." Some confusion arises from your use of the words "appropriated for the Arkansas Medicaid Program Trust Fund as the General Assembly shall see fit. . . ." Monies are ordinarily deposited into the state treasury, "credited" to particular funds therein, and thereafter "appropriated" out of those particular funds. It is confusing to refer to monies being "appropriated for" the Medicaid Program Trust Fund as the General Assembly may see fit because this language might be read as investing the General Assembly with discretion as to whether the funds in question are actually placed in the Medicaid Program Trust Fund in the first place. This is a matter that would give the electors serious ground for reflection and it must therefore be clarified before I can certify a ballot title for your measure.
 In addition, your proposal provides for appropriation of the tax revenues for the Arkansas Medicaid Program Trust Fund, which you refer to specifically in Section 2 of your proposal as being the fund created at A.C.A. § 19-5-985. The purposes for which your proposal allows expenditure of these tax revenues, however (. . . as the General Assembly shall see fit, but specifically to further the protection of elderly citizens), is much broader than the state's Medicaid Program. Under your proposal, the General Assembly could see fit to appropriate the funds for increased police protection for elderly citizens, or for defensive driving courses, or for any number of other uses relating to the protection of elderly citizens, but which have nothing to do with the Arkansas Medicaid Program. It is confusing and misleading, therefore, to channel funds to an existing Medicaid Trust fund, when your proposal invests the General Assembly with power to appropriate the funds for any number of uses that have no connection to Medicaid. Although, certainly, it is unobjectionable to invest the General Assembly with discretion as to the use of the funds, it is confusing to invest it with discretion that is incongruent with the particular fund into which the tax revenues are placed. The use of the tax revenues in question will be of critical importance to the electors of this state when casting ballots on your measure. Any misleading tendency in this regard, therefore, will not pass the scrutiny of the Arkansas Supreme Court. If it is your intention to authorize the General Assembly to direct the funds for a wide array of uses "to further protection of the elderly citizens of this state," having the funds credited to a Medicaid Trust Fund will mislead the voters. If it is your intention to require the tax revenues to be used only for the state's Medicaid Program, the language "to further protection of the elderly citizens of this state" is too broad to restrict the funds to this usage. You must therefore clarify this point before I can certify a ballot title for your measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
MP/cyh