Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
You have requested certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which I rejected due to ambiguities in the text of your proposed amendments. See
Ops. Att'y Gen. Nos. 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. My office has revised and certified popular names and ballot titles for three similar measures, as evidenced by Ops. Att'y Gen. Nos.2002-140; 2001-196; and 2001-129. You have since made additional changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, EMPOWERING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES, AUTHORIZING BARRY LEE EMIGH AND HAROLD GLEN MARTIN OR THEIR TRANSFEREES TO OPERATE GAMBLING AND EMPOWERING THE GENERAL ASSEMBLY TO PASS LAWS, TAXES AND APPROPRIATIONS WITHOUT SESSION OR ASSEMBLY
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE WITHOUT LICENSE, FEE OR PERMIT BY THE STATE, OR SUBDIVISION OR AGENCY THEREOF, AND UNLESS PROVIDED DIFFERENTLY ABIDE BY THE LAWS, RULES AND REGULATIONS OF THE STATE EFFECTING BINGO AND RAFFLES; EMPOWERING THE GENERAL ASSEMBLY TO MAKE LAWS, RULES, REGULATIONS AND APPROPRIATIONS TO ESTABLISH AND FACILITATE THE ADMINISTRATION AND OPERATION OF ANY NUMBER OF LOTTERIES TO BE OPERATED BY THE STATE WITH THE STATE WIDE SALE OF LOTTERY TICKETS TO INCLUDE FACILITATING THE OPERATION OF ANY NUMBER OF LOTTERIES WITHIN THE STATE IN COOPERATION WITH THE LOTTERIES OF ANY OTHER STATE OR STATES WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING BARRY LEE EMIGH TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF BENTON, CRAWFORD, CRITTENDEN, GARLAND, MILLER, MISSISSIPPI AND PULASKI WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CAROLL, CHICOT, JEFFERSON, OUACHITA, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES WITH THE OPERATION OF GAMBLING WITHIN EACH COUNTY A SEPARATE GAMBLING OPERATION; AUTHORIZING THE GAMBLING OPERATORS(S), THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR THE PURPOSE OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR(S) UNLESS PROVIDED DIFFERENTLY ABIDE BY THE LAWS, RULES AND REGULATIONS OF THE STATE EFFECTING GAMBLING AND THE SALE AND SERVICE OF ALCOHOLIC BEVERAGES; REQUIRING THE GAMBLING OPERATOR(S) UNLESS PROVIDED DIFFERENTLY PAY THE STATE AND LOCAL TAXES AND FEES, AS APPLICABLE, AND OBTAIN AND PAY FOR LICENSES AND PERMITS REQUIRED BY THE STATE, AND ANY SUBDIVISION OR AGENCY THEREOF; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; PROVIDING FOR THE SHIPMENT OF GAMBLING DEVICES; REQUIRING THE GAMBLING OPERATOR PAY 50% OF THE PROFIT FROM EACH GAMBLING OPERATION TO BE DIVIDED AND PAID THE CANVASSERS; REQUIRING THE GAMBLING OPERATOR PAY 50% FROM THE SALE OF A GAMBLING OPERATION TO BE DIVIDED AND PAID TO THE CANVASSERS WITH NO FURTHER PAYMENTS OF ANY KIND PAID TO THE CANVASSERS FROM THE GAMBLING OPERATION SOLD; EMPOWERING THE GENERAL ASSEMBLY TO PASS ANY LAW, RULE, REGULATION, TAX AND APPROPRIATION WITHOUT SESSION OR ASSEMBLY WHICH SIGNIFICANTLY CHANGES CURRENT LAWS EFFECTING THE "CHECKS AND BALANCES" OF GOVERNMENTAL POWERS AND AUTHORITY OF THE GOVERNOR; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE "TYPICAL FORM" OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF WHICH THE GENERAL ASSEMBLY SHALL REGULATE, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS BARRY LEE EMIGH AND HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING TAXES, FEES AND OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT UNLESS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THIS CONSTITUTIONAL AMENDMENT; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to a remaining ambiguity in the text of your proposed measure. I cannot at this time fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of this ambiguity. I am therefore unable to substitute and certify a more suitable and correct popular name or ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguity:
 • Section 2 of your proposed amendment states in relevant part that the General Assembly "shall be empowered to . . . establish and facilitate the administration and operation of any number of lotteries to be operated by the state . . . to include facilitating the operation of any number of lotteries within the state in cooperation with the lotteries of any other state. . . ." While you may intend by this language to authorize only state-operated lotteries, this intention is not entirely clear in my view. The ambiguity arises from the authorization of "any number of lotteries within the state" when operated in cooperation with the lotteries of another state. (Emphasis added). This might be interpreted as authority for lotteries other than those that are "operated by the state" pursuant to the previous clause. Because any authorization of a lottery significantly changes state law (see Ark. Const. art. 19, § 14), the voter must be fully informed of the effect of your amendment. Accordingly, the text of your measure should be clarified in this regard so that it may be properly reflected in the ballot title.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General