Mr. Harold G. Martin 209 Trivista Left Hot Springs, AR 71901
Dear Mr. Martin:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the following popular name and ballot title for a proposed constitutional amendment. Similar measures have been previously submitted on your behalf, some of which this office rejected due to ambiguities in the text of the proposed amendments. See Ops. Att'y Gen. 2004-004, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-227 and 2002-208. On March 6, 2003, this office revised and certified the popular name and ballot title for a similar measure, as evidenced by Op. Att'y Gen. 2003-054. You have since made changes to your measure and have submitted a revised popular name and ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, AUTHORIZING THE GENERAL ASSEMBLY TO OPERATE LOTTERIES, AND AUTHORIZING HAROLD GLEN MARTIN OR HIS TRANSFEREES TO OPERATE GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION AUTHORIZING BINGO AND RAFFLES BY NON PROFIT ORGANIZATIONS INCORPORATED IN THE STATE; AUTHORIZING THE GENERAL ASSEMBLY WITH THE DISCRETION TO ADMINISTER THE OPERATION OF A LOTTERY OR LOTTERIES WITH THE STATE WIDE SALE OF LOTTERY TICKETS TO BE OPERATED BY THE STATE, OR AN AGENCY OF THE STATE THEREOF, WHICH SIGNIFICANTLY CHANGES CURRENT LAWS UNDER ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14 EFFECTING GAMBLING; AUTHORIZING HAROLD GLEN MARTIN TO OPERATE, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN ONE STRUCTURE WITHIN EACH OF THE FOLLOWING COUNTIES OF CARROLL, CHICOT, CRAWFORD, CRITTENDEN, BENTON, GARLAND, JEFFERSON, MILLER, MISSISSIPPI, PULASKI AND SEBASTIAN WITH SUCH STRUCTURE LOCATED WITHIN ANY CITY AND TOWN WITHIN THOSE COUNTIES; AUTHORIZING THE HAROLD GLEN MARTIN, THOSE EMPLOYED AND SUBCONTRACTED TO OPERATE GAMBLING AS INDEPENDENT CONTRACTORS TO SELL AND SERVE COMPLIMENTARY ALCOHOLIC BEVERAGES ON ANY DAY FOR THE WHOLE OF A TWENTY-FOUR HOUR DAY WITHIN THE INTERIOR AREA OF THOSE STRUCTURES USED FOR THE PURPOSE OF GAMBLING (INCLUDING THOSE COUNTIES, CITIES AND TOWNS IN WHICH THE SALE OF ALCOHOLIC BEVERAGES IS OTHERWISE PROHIBITED); REQUIRING THE GAMBLING OPERATOR PAY 8% OF THE PROFIT FROM GAMBLING TO THE STATE FROM EACH GAMBLING LOCATION, 8% OF THE PROFIT TO THE COUNTY'S GENERAL FUND IN WHICH GAMBLING IS LOCATED AND 8% TO THE CITY GENERAL FUND IN WHICH GAMBLING IS LOCATED; PROHIBITING THE GENERAL ASSEMBLY FROM REGULATING, RESTRICTING OR PROHIBITING THE OPERATION OF BINGO, RAFFLES AND GAMBLING IN ANY MANNER; UNLESS PROVIDED FOR DIFFERENTLY THERE SHALL BE NO LICENSE, FEE, PERMIT OR TAX OF ANY KIND BY ANY NAME BY THE STATE, AND ANY SUBDIVISION OR AGENCY OF THE STATE THEREOF, ON THE OPERATION OR REVENUES DERIVED FROM BINGO, RAFFLES AND GAMBLING; EXEMPTING THE TRANSFER OF EACH GAMBLING OPERATION FROM APPROVAL BY THE STATE, OR ANY SUBDIVISION OR AGENCY THEREOF; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT SHALL EXCLUDE MONEY AS A PRIZE; DEFINING "LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT FOR THE PURPOSE OF THIS DEFINITION SHALL EXCLUDE THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "STRUCTURE" AS ANY KIND AND SIZE OF BUILDING WITH ANY ATTACHED ADDITIONS CONSIDERED A SINGLE STRUCTURE TO INCLUDE ANY KIND AND SIZE OF ANCHORED WATER VESSEL WITH ANY ATTACHED ADDITIONS TO THAT WATER VESSEL CONSIDERED A SINGLE STRUCTURE; DEFINING "GAMBLING OPERATION" AS THE AUTHORITY OF THE GAMBLING OPERATOR TO OPERATE GAMBLING, EMPLOY AND SUBCONTRACT ANY INDEPENDENT CONTRACTOR(S) TO OPERATE GAMBLING WITH THE SALE AND COMPLIMENTARY SERVICE OF ALCOHOLIC BEVERAGES; DEFINING "GAMBLING OPERATOR" AS HAROLD GLEN MARTIN OR THOSE PERSONS, COMPANIES OR CORPORATIONS TO WHICH THE GAMBLING OPERATION IS TRANSFERRED; DEFINING "PROFIT" AS THE AMOUNT OF MONEY AFTER DEDUCTING ANY, AND ALL, OPERATIONAL COSTS FROM THE GROSS EARNINGS WHICH IS THE TOTAL AMOUNT OF MONEY EARNED AFTER DEDUCTING THE MONEY PAID AS A LOSS TO THOSE AS WINNERS; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT UNLESS OTHERWISE PROVIDED; MAKING THE PROVISIONS OF THIS AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. Section 2 of your proposed amendment has been reworded since your last submission and now reads as follows:" Authorizing the General Assembly with the discretion to administer the operation of a lottery or lotteries with the state wide sale of lottery tickets to be operated by the State, or an agency of the state thereof." Ambiguities remain in this section. As with your last submission, it is unclear how a part-time citizen legislature will "administer the operation" of a lottery. The word "administer" connotes the performance of executive duties. Webster's Seventh New Collegiate Dictionary, at 12. It remains unclear, given the language used, whether the General Assembly itself will be responsible for "administer[ing]" the lottery, or whether it is permitted to delegate this function to another entity. The balance of your Section 2 appears to authorize a separate state agency to operate the state wide sale of lottery tickets. This authority is not clear, however, as to the actual operation of the lottery itself.
 2. Section 3, subsections (3), (4) and (5) of your proposed amendment require the gambling operator to pay the state, county and city (if applicable), respectively, 8% each of the "profit" earned by the gambling operation. Each subsection states that the "gambling operator within five (5) working days from the first Tuesday of November of each year shall pay eight (8%) of the `profit' earned previous to the first Tuesday of December of each year from gambling. . . ." An ambiguity arises as to how the profit will be capable of calculation in early November when it includes profits earned through the month of November and into December.
 3. Section 3(7) of your proposed amendment states that: "The General Assembly shall be prohibited from regulating, restricting or prohibiting the operation of bingo and raffles and the operation of gambling in any manner." This language, on its face, restrains the General Assembly from prohibiting bingo and raffles, even if conducted by other than nonprofit corporations as authorized in your amendment. That is, under this subsection, any for profit corporation could conduct bingo and/or raffles in any manner it sees fit and the General Assembly would be powerless to prohibit it. This language also prohibits the General Assembly from restricting the operation of any gambling activities, even if conducted by persons other than the "gambling operator" as defined in your amendment. Similarly, this language, on its face, would permit the operation of gambling by any number of operators and the General Assembly would be without power to restrict it. I doubt this was your intention, but the language used creates an ambiguity in this regard. In addition, the language of this subsection is somewhat unclear as to the General Assembly's power to regulate the service of alcoholic beverages in connection with the gambling operation. Although Section 3(7) deprives the General Assembly of the power to regulate "the operation of gambling" the phrase "operation of gambling" is not defined in the amendment and I am uncertain, therefore, whether Section 3(7) deprives the General Assembly of all power to regulate the sale or service of alcoholic beverages in connection with the gambling operation.
 4. Section 7(1)(h) of your amendment defines the term "profit" as the "amount of money after deducting any, and all, operational costs to operate gambling from the gross earnings which is the total amount of money earned from gambling after the deduction of money paid as a loss to those persons as winners." While this language may not be ambiguous on its face, ambiguities arise when this subsection is read in conjunction with Section 3(7) set out above. Again, the last-cited section deprives the General Assembly of any authority to regulate the operation of gambling. If your proposed amendment vests unbridled discretion in the gambling operator to define, calculate and audit his own profits, which profits will then be used as a basis for calculating the 8% paid to the various governmental entities, this fact must (and will), be made crystal clear to the voters in a ballot title for your measure.
 5. Section 8 of your proposed amendment is entitled "Amendment Self-Executing." The text of this section, however, states merely that "The provisions of this amendment shall take effect immediately upon passage of this amendment unless otherwise provided." The disconnect between the title and the text of this section leads to an ambiguity.
 6. Section 9 of your proposed amendment is entitled "Severability, General Repealer." The second sentence of this section does not contain any punctuation at the end and I am uncertain, because this is the final sentence in your submission, whether it should simply contain a period at the end, or whether perhaps some additional text has been inadvertently omitted.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General