Mr. Barry L. Emigh 1104 7th Street Hot Springs, AR 71913-4225
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107, of a popular name and ballot title for a proposed constitutional amendment. You have previously submitted various similar measures, some of which this office rejected due to ambiguities in the text of your proposed amendments. See Ops. Att'y Gen. Nos. 2003-382, 2003-328, 2003-307, 2003-295, 2003-275, 2003-258, 2003-245, 2003-232, 2003-204, 2003-169, 2003-026, 2003-008, 2002-346, 2002-335, 2002-325, 2002-308, 2002-293, 2002-272, 2002-262, 2002-242, 2002-227, 2002-208, 2002-118, 2002-102, 2002-077, 2002-042, 2002-026, 2002-001, 2001-380, 2001-358, 2001-341, 2001-173, 2001-110, 2001-095 and 2001-074. This office has revised and certified popular names and ballot titles for five similar measures, as evidenced by Ops. Att'y. Gen. Nos. 2003-351; 2003-054; 2002-140; 2001-196; and 2001-129. After my last certification (in 2003-351), you have made additional changes to your measure and have submitted a revised popular name and ballot title for my certification.
Before reviewing your latest proposed popular name and ballot title, I must address what I consider a major problem relating to your various submissions. As you know, this office is statutorily charged with reviewing and, if necessary, revising proposed popular names and ballot titles. A.C.A. § 7-9-107. In the course of fulfilling this obligation, my predecessors and I have rejected various versions of your current submission a staggering 35 times because there were ambiguities in the text of your proposed amendment. We have certified your submission an additional five times, most recently in Ark. Op. Att'y Gen. No.2003-351, and thereby authorized you to begin the signature collection process.
The Code anticipates that upon a sponsor's obtaining my certification of a ballot title, the sponsor will proceed to obtain signatures upon an initiative petition to submit the proposed amendment to the people. A.C.A § 7-9-104. However, you have consistently failed to set about obtaining signatures, instead resubmitting already certified ballot titles in revised forms. In my most recent certification, I significantly revised both your proposed popular name and ballot title. Notwithstanding my revisions, in your current submission, you have totally ignored what I said, instead submitting a popular name and ballot title that incorporates verbatim much of the language that I rejected in my previous opinion. Moreover, even the current submission to which this opinion responds has been submitted three different times within a few weeks, causing my office to have to try to analyze a constantly moving target.
This abbreviated history is unfortunately characteristic of the problems encountered in dealing with the flood of submissions on various issues that you have directed to this office over the last few years. In enacting A.C.A. § 7-9-107, the legislature intended only that this office review popular names and ballot titles for clarity. It did not intend to commit this office's limited resources to the herculean task of repeatedly detailing the ambiguities in a single individual's manifold submissions. It further did not intend to commit this office to reviewing numerous variations of a single submission, many of which ignore previous opinions, even after I have certified a particular popular name and ballot title, thus authorizing you to begin signature collection. Accordingly, although I will continue to discharge my duty to review proposed amendments submitted to this office, please be advised that I will summarily decline in the future to repeat analyses that I have offered on previous submissions and that you have chosen to ignore. In order to avoid further wasting the taxpayers' money, I further encourage you in the strongest terms to forbear submitting proposed amendments to this office unless you are prepared to act on my certification rather than submitting yet another modified proposal.
Your proposed popular name and ballot title state:
 Popular Name AN AMENDMENT PERMITTING THE OPERATION OF BINGO, RAFFLES, STATE-OPERATED LOTTERIES AND GAMBLING
 Ballot Title AN AMENDMENT TO THE ARKANSAS CONSTITUTION EMPOWERING THE GENERAL ASSEMBLY WITH THE DISCRETION TO CREATE A STATE OPERATED LOTTERY OR LOTTERIES TO INCLUDE THE STATE'S OPERATION OF LOTTERIES IN COOPERATION WITH OTHER STATES AND LOTTERIES OPERATED IN COMBINATION WITH OTHER STATES WITH EXCEPTION ON THE STATE-WIDE SALE OF LOTTERY TICKETS WHICH CHANGES THE LOTTERY PROHIBITION CONTAINED IN ARKANSAS CONSTITUTION ARTICLE 19 SECTION 14; PERMITTING LOCAL OPTION ELECTIONS FOR THE ELECTORATE OF ANY CITY OR COUNTY TO ACCEPT OR REJECT EACH OF THE FOLLOWING BALLOT OPTIONS SEPARATELY: THE OPERATION OF BINGO AND RAFFLES BY NON-PROFIT ORGANIZATIONS INCORPORATED IN THE STATE, THE OPERATION OF GAMBLING BY THOSE BUSINESSES PERMITTED TO SELL ALCOHOLIC BEVERAGES DURING THE PERMITTED HOURS OF ALCOHOLIC BEVERAGE SALES, BUT EXCLUDES PRIVATE CLUBS AND BUSINESSES PERMITTED TO SELL ONLY BEER AND/OR WINE, THE OPERATION OF GAMBLING BY THOSE BUSINESSES PERMITTED TO OPERATE PARA-MUTUEL WAGERING AND SALE OF LOTTERY TICKETS; PROHIBITING PRIVATE CLUBS TO INCLUDE OTHER BUSINESSES WITHIN A "DRY COUNTY" FROM SELLING ALCOHOLIC BEVERAGES WITH EXCEPTION TO PERMIT THE SALE OF ALCOHOLIC BEVERAGES PRODUCED ON SITE; EMPOWERING THE GENERAL ASSEMBLY, UNLESS PROVIDED FOR DIFFERENTLY, TO REGULATE, LICENSE AND TAX BINGO, RAFFLES, LOTTERIES AND GAMBLING; PROVIDING FOR THE LEGAL SHIPMENT OF GAMBLING DEVICES INTO THE STATE; DEFINING "BINGO" AS THE RISKING OF MONEY ON A GAME PLAYED WITH NUMBERED CARDS CORRESPONDING TO NUMBERED BALLS DRAWN AT RANDOM TO WIN A PRIZE OR MONEY; DEFINING "RAFFLE" AS THE RISKING OF MONEY FOR THE DISTRIBUTION OF A PRIZE AMONG PERSONS WHO HAVE PAID FOR A CHANCE TO OBTAIN A PRIZE BUT EXCLUDING MONEY AS A PRIZE; DEFINING" LOTTERY" AS THE TYPICAL FORM OF A LOTTERY CHARACTERIZED BY THE ARKANSAS SUPREME COURT WHICH INVOLVES THE SALE OF A LARGE NUMBER OF CHANCES RELATIVE TO THE SELECTION OF A SMALL NUMBER OF WINNERS BY A DRAWING DETERMINED BY CHANCE ALONE; DEFINING "GAMBLING" AS THE RISKING OF MONEY BETWEEN PERSONS WHERE ONE IS LOSER AND OTHER GAINER WITH GAMES OF CHANCE, SKILL AND ANY COMBINATION THEREOF, BUT EXCLUDES THE OPERATION OF A LOTTERY, BINGO AND RAFFLES; DEFINING "ALCOHOLIC BEVERAGES" AS ALL INTOXICATING LIQUORS OF ANY SORT TO INCLUDE BEER AND WINE; DEFINING" DRY COUNTY" AS ANY CITY, TOWN OR COUNTY IN WHICH THE SALE OF ALCOHOLIC BEVERAGES HAS NOT BEEN ACCEPTED BY THE VOTERS AS A LOCAL BALLOT OPTION; THE PROVISIONS OF THIS AMENDMENT SHALL TAKE EFFECT IMMEDIATELY UPON PASSAGE OF THIS AMENDMENT EXCEPT AS OTHERWISE PROVIDED AND REQUIRING THE GENERAL ASSEMBLY TO MAKE ALL OTHER AND FURTHER LAWS, RULES AND REGULATIONS TO THE ENFORCEMENT OF THIS AMENDMENT; MAKING THE AMENDMENT SEVERABLE; AND REPEALING ALL LAWS AND CONSTITUTIONAL AMENDMENTS IN CONFLICT WITH THIS AMENDMENT
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's PoliticalCaucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v.Hall, supra; and Walton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see
A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. §7-5-522's five-minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
1. Section 1 of your proposed amendment provides:
 Unless provided for differently within the provisions of this amendment the General Assembly shall be empowered with the discretion to create a State operated lottery or lotteries to include the discretion to permit the State's operation of a lottery or lotteries in cooperation with the lotteries operated by other states and/or lotteries operated in combination by other states with the State-wide sale of lottery tickets.
 This provision is confusing in that it is unclear whether the closing phrase "with the State-wide sale of lottery tickets" refers to the State of Arkansas or to some other state that allows state-wide sales of lottery tickets. I assume, but should not have to infer, that your previous capitalization of the term "State" only when referring to Arkansas means that the phrase "State-wide sale" likewise refers to Arkansas. If so, this section appears to conflict with § 2(d), which suggests that the state-wide sale of lottery tickets might be foreclosed by local option elections.
 2. The introductory passage of § 1(2) of your proposed amendment provides as follows:
 Beginning one hundred and eighty (180) days after passage of this amendment the governing body of any city or county may call a local option election or anyone may petition the qualified voters within any city or county to initiate a local option election for the electorate with the respective jurisdiction to accept or reject each of the following as separate ballot options:
 This provision is ambiguous in that it fails to specify precisely how "anyone may petition the qualified voters . . . to initiate a local option election. . . ." Your proposed language in this section is virtually identical to language one of my predecessors faulted as being ambiguous in previous submissions. See, e.g., Ark. Ops. Att'y Gen. Nos. 99-353 and 99-354. In the latter of the referenced opinions, my predecessor remarked that "a significant question is raised as to the impact of the proposed measure on the provisions of Amendment 7 of the Arkansas Constitution. It is unclear from these provisions whether the procedures provided under Amendment 7 are to be followed in executing the right of initiative granted under the proposed measure, or whether the measure is intended to depart from those provisions — and if so, the extent to which the general repealer clause will affect Amendment 7." This criticism continues to apply to your current submission.
 3. Subsections 2(b) and (c) of your proposed amendment would authorize the following by local option election:
 (b) The operation of gambling by any business permitted to sell alcoholic beverages for on-premise consumption during the permitted hours of acloholic [sic] beverage sales, but shall exclude private clubs and those businesses permitted to sell only beer and/or wine.
 (c) The operation of gambling by those businesses permitted to operate para-mutuel [sic] wagering during the permitted hours of alcoholic beverage sales which shall not be necessary as a local ballot option if the voters accept (2)(b) of this Section, but may be initiated as a local ballot option even if the voters have rejected (2)(b) of this Section.
 In representing that a local option election "shall not be necessary" pursuant to subsection (c) if gambling has been approved pursuant to subsection (b), you are assuming the businesses "permitted to operate para-mutuel [sic] wagering" are necessarily also businesses
"permitted to sell alcoholic beverages for on-premise consumption." Even assuming they currently are as a matter of practice, businesses "permitted to operate para-mutuel [sic] wagering" are not necessarily a subset of businesses "permitted to sell alcoholic beverages for on-premise consumption," as you suggest. It is unclear whether you mean in subsection (c) to authorize gambling only if a business is permitted both to conduct pari-mutuel betting and to serve alcoholic beverages.
4. Section 3 of your proposed amendment provides:
 Unless provided for differently within the provisions of this amendment the State shall be empowered to regulate, license and tax bingo, raffles, lotteries and gambling which may include requiring a local and/or regional economic impact study, public transit and economic developement [sic] plan before issuing any licenses.
 This provision is ambiguous in that fails to address what effects the referenced economic impact studies and development plans might have on the results of the local option elections referenced elsewhere in your proposed amendment. Is the State authorized through its powers of regulation and licensure to effectively negate the results of a local option election?
 5. Subsection 2(d) of your proposed amendment would authorize by local option election "[t]he sale of lottery tickets if a lottery is operated by the State, as provided in (1) of this Section."
 Read together, § 1 and § 2(d) are confusing in that, whereas § 1 arguably authorizes "the State-wide sale of lottery tickets," § 2(d) appears to authorize political subdivisions to vote down the sale of lottery tickets. It is unclear whether your amendment would authorize a state-wide lottery only upon the approval of local political subdivisions. Under the terms of your current submission, I cannot determine whether the only local option authority would be to vote down sales that would otherwise automatically be authorized pursuant to § 1 or whether any sale of lottery tickets must be authorized by local option election.
6. Section 6 of your proposed amendment provides:
 The General Assembly shall be empowered with the discretion to permit, regulate, license and tax the sale of alcoholic beverages produced on site for on-premise consumption and transport for personal and commercial use even in a "dry county."
 This provision appears to authorize the sale within a dry county of alcoholic beverages "produced on site" under two circumstances: (1) if the beverages are consumed "on-premise" — a provision I assume would apply to wineries and distilleries that serve alcohol on-site; and (2) if the beverages are sold for "transport for personal and commercial use." The second of these provisions is confusing in that it appears inconsistent with the very concept of a "dry county." Are you proposing that a vintner or distiller could essentially open a liquor store in a dry county? What does it mean to say that a beverage is produced "on site" for "transport for personal and commercial use"? Every alcoholic beverage is produced on some "site." Read literally, this provision would authorize the sale of imported scotch whiskey in a dry Arkansas county. Moreover, even if the term "site" were read as applying only to locations within the dry county or within Arkansas, the authorization of sales for "commercial use" would appear to support the establishment of liquor stores within what you nevertheless characterize as a "dry county."
 The ambiguities inherent in this section are only compounded when it is read in conjunction with § 5 of your proposed amendment, which provides:
 Unless provided for differently within the provisions of this amendment no private club nor any business of any kind within a "dry county" shall be permitted to sell alcoholic beverages of any sort.
 Is this provision intended to outlaw any and all sales of alcohol in dry counties, including the currently authorized consumption of liquor in private clubs located in certain dry counties? And how is it to be reconciled with § 6, which appears to authorize sales of alcohol in dry counties on a scale so broad that it would defy logic to even continue referring to such counties as "dry."
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id.
Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission, assuming the resubmission comports with the requirements I set forth at the beginning of this opinion.
Sincerely,
MIKE BEEBE Attorney General