Mr. Drew Pritt 217 South Valentine Little Rock, AR 72205
Dear Mr. Pritt:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. Your popular name and ballot title are as follows:
 Popular Name ELECTION OF A STATE SUPERINTENDENT OF EDUCATION Ballot Title THE PASSAGE OF THIS MEASURE WOULD ALLOW THE CREATION OF AND THE POPULAR ELECTION OF A STATE CONSTITUTIONAL OFFICER TITLED THE STATE SUPERINTENDENT OF EDUCATION. THIS POSITION WOULD REPLACE THE STATE BOARD OF EDUCATION, WHOSE NINE MEMBERS ARE APPOINTED BY THE GOVERNOR TO SERVE SIX-YEAR TERMS. THIS INDIVIDUAL WHO [SIC] WOULD BE ELECTED EVERY FOUR YEARS IN THE SAME MANNER AS OTHER STATE CONSTITUTIONAL OFFICERS. THE STATE SUPERINTENDENT OF EDUCATION WOULD APPOINT MEMBERS OF THE DEPARTMENT OF EDUCATION AND WOULD SUPERVISE AND MANAGE ALL STATE AND FEDERAL PUBLIC SCHOOL DOLLARS
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. SeeArkansas Women's Political Caucus v. Riviere, 282 Ark. 463,466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device.Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v.Bryant, 259 Ark. 294, 532 S.W.2d 741 (1976); Moore v. Hall,229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall,229 Ark. 416, 417, 316 S.W.2d 185 (1958); Becker v. Riviere,270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285,884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34
(1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v.McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke.Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71
(1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104
(1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
 1. The first sentence of your proposed measure states that:" The State Superintendent of Education shall be elected at each general election, every four years, in the same manner as other State Constitutional Officers and shall enter upon the duties of his/her office at the same time as prescribed by law." Although this language is not ambiguous, it would necessarily mean that the Superintendent of Education would be elected on a partisan basis (or as an independent under the existing statutory procedure for that type of candidacy), and would not take office until January of 2011. Although these facts flow necessarily from your measure and do not prevent me from certifying or substituting and certifying a ballot title for your proposed amendment, I will note that these facts must be pointed out to the voters in any ballot title for your measure.
 2. The third sentence of your proposed measure states that: "[t]he creation of this constitutional office, to be elected at the same time as all other state constitutional officers, will eliminate the Board of Education and replace it with the State Superintendent of Education." Uncertainty arises in my judgment as to when the" Board of Education" is eliminated. The language above states that the "creation" of this constitutional office "will eliminate" the Board and replace it with the Superintendent. As noted above, the Superintendent will not take office under your measure until January of 2011 and it may be your intention to retain the current State Board of Education until that time. It might be contended, however under the above language of your proposed amendment, that the office of Superintendent is "create[d]," although not yet filled, upon passage of your measure, which without a stated effective date, will be effective thirty days after the election at which it is approved (in December of 2006). See Arkansas Constitution, art. 5, § 1 ("General Provisions") ("Majority"). Uncertainty as to the continued existence of a State Board of Education until the new Superintendent can be elected and begin to serve may give the voters "serious ground for reflection." As a consequence, I cannot certify a popular name and ballot title for your measure without clarification on this point.
 3. The next two sentences of your proposed measure state that:" the State Superintendent of Education will have the power to appoint, with the consent of the General Assembly, to appoint [sic] eight Education Commissioners, two from each Congressional District, to serve at the will of the State Superintendent of Education. These offices shall replace the existing Education Commissioners." Several ambiguities arise from this language in addition to the syntactical error noted. First, your measure requires the "consent" of the General Assembly on the appointments of the new "Education Commissioners." Uncertainty arises as to how this consent will be expressed. For example, must each house separately consent to each appointment, or is some type of joint action of the one hundred and thirty-five representatives and senators contemplated? Existing statutory procedures for senate confirmation of gubernatorial appointees would appear inapplicable. See A.C.A. § 25-17-204
and § 10-2-113. Additionally, your measure does not specify whether the General Assembly will itself have authority to determine any procedure in this regard. Second, the statement in your measure that "these offices [Education Commissioners] shall replace the existing Education Commissioners" is confusing because it appears to either incorrectly refer to the current members of the State Board of Education as "Commissioners," a name by which they are not now known, or to refer to more than one current Commissioner of Education, where only one currently exists. In short, it is unclear to which "existing Education Commissioners" this passage refers. See
A.C.A. § 6-11-101 (Supp. 2005) (referring to the current "members" of the "State Board of Education" and A.C.A. § 6-11-102 (Supp. 2005) (referring to the current "Commissioner of Education" who is the administrative head of the Department of Education). In addition, if your reference to the existing "Education Commissioners" refers to the current State Board of Education, your statement that the "Education Commissioners" "shall replace the existing Education Commissioners" seems at odds with your earlier pronouncement that the elected Superintendent of Education" will eliminate the Board of Education and replace it with the Superintendent of Education." If your intention is, on the other hand, to have the new Education Commissioners replace the existing Commissioner of Education, there is only one current "Commissioner." If this is your intention, your reference to this position in the plural is therefore confusing. Your proposed ballot title summarizes this portion of your amendment as allowing the Superintendent to" appoint members of the Department of Education," further confusing matters. These ambiguities are compounded by later references in your amendment to "the Arkansas State Board of Education" in describing, for example, the new Superintendent's duties as being to "[s]erve as the Chief Administrative officer of the Arkansas State Board of Education." As noted previously, earlier language of your amendment provides for the elimination of the State Board of Education. Third, although your measure states that these "Education Commissioners" will serve at the will of the State Superintendent and that they will replace the "existing Education Commissioners," it is unclear what duties and powers are invested in these new Education Commissioners. Later language of your proposed amendment refers to the Superintendent's duty to "[a]dminister . . . all policies and procedures adopted by the State Board of Education," which as noted earlier, the language of your proposed amendment eliminates. The exact lines of authority as between the elected Superintendent and the Education Commissioners who serve at his or her will are thus unclear.
 4. Questions may arise as to the extent of the power conferred upon the Superintendent to "[h]ave general supervision over and management of all public school funds provided by the State and Federal Government." For example, questions may arise as to whether and to what extent this authority overlaps or impacts the current authority of the General Assembly and local school boards over such funds. In addition, the last-stated duty of the Superintendent under your proposed amendment is to "[a]ssume such other responsibilities and perform such other duties as may be prescribed by law or as may be agreed upon by the State. . . ." This last reference to duties "agreed upon by the State" is unclear. How would this agreement be expressed? The exact powers invested in the new offices you create will be of paramount importance to the voters in deciding whether to approve your measure. I cannot certify a popular name and ballot title explaining the impact of your measure in this regard to the voters without clarification of the language used.
 5. The final portion of your proposed amendment sets the qualifications for the State Superintendent of Education, including the fact that he or she must be "an Arkansas resident for (7) years;" must "possess either a Masters in Education or similar degree qualifications or have experience limited to no less than 10 years of teaching in the K-12 Arkansas Public School System;" and must "never have been convicted of embezzlement of public money, bribery, forgery, or any crimes involving the endangerment of or abuse of a child." Uncertainty arises from the first noted qualification as to whether the seven-year residency requirement must be met immediately preceding the election or at any time in the candidate's life. I cannot determine this issue from the language used. With regard to the "Masters in Education or similar degree qualifications" it is uncertain what "similar degree qualifications" might suffice. Finally, a question arises as to how the final qualification noted above (that the candidate must never have been convicted of embezzlement of public money, bribery, forgery, or any crimes involving the endangerment or abuse of a child), interacts with the current requirements of Arkansas Constitution, art. 5, § 9, which provides that "[n]o person hereafter convicted of embezzlement of public money, bribery, forgery, or other infamous crime, shall be . . . capable of holding any office of trust or profit in this State." (Emphasis added). The Arkansas Supreme Court has held that any felony constitutes an infamous crime under this provision. See Op. Att'y Gen. 2004-215, citing Powers v. Bryant, 309 Ark. 568, 832 S.W.2d 232
(1992). In addition, I have stated that article 5, § 9 renders ineligible for public office any person convicted of a misdemeanor, if the misdemeanor is one that involves deceitfulness, untruthfulness, or falsification, because in these cases the misdemeanor will constitute an "infamous crime." Id. The prohibition contained in your proposed amendment is not limited to felonies, but is limited as to the subject matter of the conviction. A question thus arises as to whether your proposed amendment would supersede article 5, § 9 and authorize a person with a felony or misdemeanor conviction outside those subject matter areas enumerated in your measure to be elected and serve as Superintendent. This issue may give the voters "serious ground for reflection."
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34
(1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Robertsv. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title.See A.C.A. § 7-9-107(c). You may, after clarification of the matters discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MIKE BEEBE Attorney General
MB/cyh